Good morning, Your Honors. May it please the Court, my name is Amy Endo. I represent the plaintiffs ILWU and ILWU Local 21. With the Court's permission, I'd like to reserve five minutes for rebuttal and I'll watch the clock. This case is about civil disobedience and the right to engage in collective action during a heated labor dispute without fear of retaliation from law enforcement authorities. Defendants said it best in their brief, actually, where they state that these suspects were being sought because they were, quote, part of a crowd that refused to cooperate with officers. It is precisely this type of guilt-by-association analysis that is prohibited by the First Amendment and the reason we're here today. There are three genuine disputed issues of material fact that preclude summary judgment in this case. Number one, whether... Absolutely, Your Honor. The ILWU most certainly has standing in this case with regard to... What kind of standing? I mean, there's nothing... The ILWU isn't about to be arrested. It's not about to suffer any damages. So it's... It hasn't suffered any injury, in fact, under Lujan. So what saying is there here? Under the Fair Housing case in the Ninth Circuit, an organization has a compensable injury, in fact, on its own behalf where it can establish a diversion of its resources and a frustration of its mission stemming from the defendant's conduct. You didn't allege that, though. We allege that the... For purposes... I think for purposes of standing, it's sufficient that we allege that the union was... The union was bringing claims on its own behalf as well as on behalf of its members and that it had an interest in prohibiting the further chilling of speech, which is the reason it had to divert these resources. The union will divert its resources in representing its members in seeking to quash any arrests. Is that right? That is correct. The governing law in this circuit recognizes that diverted staff time is a compensable injury as well as diverted resources from its efforts in counteracting the defendant's conduct, whether it's to mitigate the injury resulting from the defendant's conduct or to otherwise address the problem. Here we put evidence in the record to show that defendants... In the record, I guess I want to follow up on the question that's been asked already because this circuit evaluates standing as of the date the complaint was filed. Absolutely. What facts did you allege in your complaint? In fact, you can cite to those facts. I would appreciate it to demonstrate that this injury to ILWU as an organization. So if you could... In paragraph four of the complaint, we allege that the ILWU International, along with its locals, has an economic and legal interest concerning the safety and welfare of its membership as victims of excessive and wrongful police conduct by defendants related to the membership's actions as an ILWU member and their association with the ILWU. The ILWU International sues on its own behalf and in its representative capacity on behalf of its affected members. We make the same statements with respect to Local 21 in paragraph five. Now, you were specific as to diversion and frustration, which our circuit law requires, but that came in response to the motion for summary judgment. That is correct, yes. And under LaSocian, that's not sufficient because it's not in the complaint. So you have to rely strictly on paragraphs four and five. Is that it? We would submit that the paragraphs four and five are sufficient for the purpose of demonstrating the diversion of resources and that it has an economic and legal interest in counteracting these problems that otherwise affect the membership's willingness to participate in collective action with the union. Did you ever seek leave to amend to add into the complaint or file a complaint with the specificity of diversion that you set forth in the declaration of Dan Kaufman? Well, I think that the LaSociacion case that you referred to earlier is not entirely on point Why don't you answer my question first, and then you can go on. Did you seek leave to amend when the issue was raised? No, we did not. We did not seek leave to amend. It's our position that the allegations as set forth in the complaint You've answered the question. Okay. The LaSociacion case, or otherwise known as Lake Forest case, is somewhat distinguishable because in that case the plaintiff did not allege organizational standing at all. And so the court stated that the plaintiff could not, in response to a summary judgment motion, change its theory of standing and assert organizational standing for the first time. Here we've made clear since the outset that the union was suing on its own behalf as well as on behalf of its members. With regard to standing as to the equitable relief claims But for organizational standing to exist, you have to allege at the time of the filing of the complaint that you suffered a diversion of resources. And you say that that allegation is made in Paragraphs 4 and 5 of the complaint. Is that correct? You stand or lose on Paragraphs 4 and 5. What about associational standing? Have you considered that? Yes. The associational standing requires showing that the members would otherwise I'm sorry, let me back up. We are only asserting associational standing with respect to the equitable relief claims. That's right. And that would be prospective equitable relief. That is correct. And here we have shown that at the time that the complaint was filed, the ILWU members and supporters faced a very real and imminent threat of further public humiliation in connection with this custodial arrest policy that we're targeting in this case. And we've submitted evidence to that effect in response to the summary judgment motion, which shows that the defendants continued making these custodial arrests of ILWU members and supporters up until September 18th, shortly after union lawyers accused them of conducting unlawful arrests, and just four days before it was filed. May I direct you to another issue which pops up in my mind, which is this. The arrests now seem to be barred by the statute of limitations. If that is so, if there's no triable issue of fact as to any arrests possibly being made, why is the motion for summary judgment in error? The motion for summary judgment, I think what Your Honor is alluding to is an issue of mootness. Yes. And the motion for summary judgment was brought on lack of standing grounds, and mootness looks at a slightly different time period. There is nothing in this case demonstrating that the police officers here cannot reinstitute their custodial arrest policy. And, in fact, if summary judgment is granted, they will be emboldened to do so. It is defendants' burden to show that voluntary cessation of conduct somehow demonstrates mootness, and they haven't met that high burden here. Moreover, we've pledged to the statute of limitations issue. These are misdemeanors which occur. I'm sorry. I was speaking to the prospect of injunctive relief. Yes. But you're worried about them being arrested for things that happened a long time ago, right? As of the time, yes. For standing purposes, you look at the facts as they existed at the time that the lawsuit was filed. Right. And here, at that time, they faced a very real imminent threat of further persecution in connection with the same. But now they don't, right? I mean, now the statute is run. If they were to be arrested and arraigned at the arraignment hearing, the plea of a statute of limitation would certainly get rid of any substantial grounds for prosecution, would it not? Yes. But as we allege in paragraph 44 of our complaint, the plaintiffs and their members intend in the future exercise of their First Amendment rights by participating in further union activities in the future. So you want to have an injunction against arrests no matter what they do in the exercise of their rights? Absolutely not, Your Honor. The injunctive relief that we would be seeking here would seek to prohibit police from retaliating against individuals gathering in mass demonstrations, as was the case here. There may be protocols and procedures in place for policing collective action. The specifics of what that might look like might involve a sight and release procedure or an issuance of summons, as well as specific standards delineating when off-site custodial arrests for simple nonviolent misdemeanors are warranted. So you want an injunction that the police should follow the law? More or less, right? The effect of it would be yes. But it would be sort of tailored to ensure that that was the case, because here when it's just left without these standards, we see here that there was an abuse of their police authority, and they had this very emotional response to this mass demonstration and went on to ---- Where is there a tribal issue of fact that the police have intended to not follow the law in the future? I'm sorry. Can you repeat the question? Yes. Is there any evidence that the police have stated we don't intend to follow the law in the future? No, but the law doesn't require an intent to not follow the law. If it's about voluntary---- Where is the evidence that the police won't follow the law in the future? We submit that the custodial arrest policy designed to target ILWU members and supporters because of their mere association with a group perceived to be violent as a whole would be unlawful, and we have no reason to believe that they cannot reinstitute that policy. So what sort of an injunction would you have the court fashion? Tell me. As I just mentioned, it would be some kind of protocols and procedures in place for---- No, no, no. Don't give me some kind. Give me what you want. It would be circumcised release protocols or when a summons should be issued for nonviolent misdemeanors, simple misdemeanors in connection with a mass demonstration, not going out and hunting down and plucking these people from their homes for a simple trespass violation. The Supreme Court has made clear that people can be arrested for traffic incidents. Absolutely. Nobody is disputing that these officers are allowed to hold individuals liable and accountable for any crimes that they've committed. The issue here is the manner in which they retaliated against these individuals, and they didn't have public peace or officer safety concerns in mind. Indeed, they rejected efforts to arrange for a peaceful turn in process and instead chose to use a special investigative team that typically deals with violent crime and drug felonies and have these individuals go and hunt them down in their homes and in the community. And that shows that this wasn't about addressing violence or, you know, holding them accountable for trespass. It really was some sort of retaliatory send a message to the union as a group. So, Judge Mayo, what would practically speaking, what would the relief look like? What is it that, you know, because you've asked for a declaratory judgment with respect to this. What would the declaratory judgment look like? What would your relief look like? In addition to the damages that we would seek for organizational losses, it would be an injunction that tries to delineate clear standards for officers to follow in dealing with policing collective action so that they are not combating these mass protests and unfairly treating these individuals because of their association with a large group. And so, really, the issue isn't so much what those standards look like, rather the presence of standards in policing mass protests. Because there were none here, and instead they came together and came up with this policy that was designed to just go out and hunt these people down, and we're saying that's the issue. That's the problem. If there were standards and protocols in place that weighed the safety and, you know, the usual concerns that officers, you know, need to think about when they react to an allegation of some kind of unlawful behavior, that would be fine. And with that, I will reserve the time for questions. Have you submitted to the court in the motion for preliminary injunction, did you submit to the court any form of protocols and standards that you wished to adopt? We did not move for preliminary injunction. I mean, or in your brief, have you spelled out word for word what you want? No, Your Honor. I don't think that the summer judgment motion called for that. May it please the Court. I am Mike Tardif. I'm here representing Cowlitz County, Sheriff Nelson, Chief Rosenzweig, also the City of Longview, and Chief Dusha. With me is Ms. McIntyre, and originally we had planned an argument, so I would speak on behalf of both jurisdictions on the issues of. Would you start the clock, please? Okay, I'm sorry. Originally we planned that I would speak on the issues of the retaliation and speech, and Ms. McIntyre would speak on the questions of standing. In view of the Court's questions, I'll offer to reverse that and let Ms. McIntyre speak first if that would be more comfortable for the Court, and then I will conclude on issues as to if needed on the issues of the speech and retaliation. That would be fine because you stand for the merits. Yes, I agree, Your Honor, and I think we just decided in our order based on the volume of briefing, so I'll let Ms. McIntyre speak now. Thank you. Good morning, Your Honor, and thank you. Please record Elizabeth McIntyre, and Your Honor's questions I think really hit the nail on the head with respect to the various standing problems we have, both as an association and organizationally. Speaking first on the- Well, as to associational standing, isn't there, it's pretty clear that having some of its members already arrested, if the ILWU members are likely to be arrested, the ILWU has associational standing, doesn't it? Your Honor, I don't believe so under these facts, and the reason is because it is true that an association in certain circumstances can seek injunctive declaratory relief, not monetary damages on behalf of the members, and that's under the test set forth in Hunt, the three parameters of associational standing. But for them to seek injunctive relief, what the ILWU would have to show is that members face a likelihood of substantial and immediate irreparable injury. That is something that is ongoing. And if you look at the circumstance in Hunt, I think, which is a good example of when that is, in fact, the case. In Hunt, it addressed a North Carolina statute that had to do with the branding or labeling of grades on Apple boxes. That was continuing to affect the members on a daily, ongoing basis until it was remedied. What we have here is a discrete set of events that happened over three years ago, over a course of about ten days, in September of 2011, where a handful of members were arrested, and by plaintiff's own pleadings and evidence, that stopped after a period of time. That dispute is in the rear window by a long shot. It's over. It's done. And they don't face any ongoing arrests or supposed retaliatory action. What gave rise to the protest? What was that? What gave rise to the protest? They wanted these jobs to be longshoremen jobs, right? Exactly. Are those jobs now longshoremen jobs? Well, I believe, Your Honor. Well, I believe they are. I believe they are longshore jobs. I believe that that was resolved through a different court proceeding in which the EGT and the Port of Longview and the Longshore Union worked out a resolution, and it's over. What you're saying is there's no pleaded or conceivable basis for there being a labor dispute which will cause protests leading to arrests. Is that correct? I'm not sure that if I understand your question correctly, Your Honor. What I'm saying is under these facts, what's alleged and what the evidence has shown, there is no threat of immediate imminent irreparable injury to the members for which injunctive relief might be appropriate. This is simply not that kind of case. And, in fact, it's even more compelling in this case than in the Lyons case, which both parties cited, in which the gentleman was seeking an injunction against Los Angeles for imposing chokeholds. And what the U.S. Supreme Court held there was that that was just too speculative to be appropriate for injunctive relief. It doesn't mean that he did not have a cause of action for damages if there was a constitutional violation. Just as these members may have a cause of action for damages if they could show that their constitutional rights were violated, but that's not what they're seeking. The union is seeking a prospective injunctive relief, which under these facts is really not appropriate because of the setting for this. And on the issue of organizational standing, I think it's really important to point out that they didn't plead. I submit they did plead organizational standing. They only pled the bare assertion that they were bringing this lawsuit on their own behalf as well as on behalf of the members. There are no pleadings in their complaint that suggests that they suffered a frustration of their mission or a diversion of their resources. In the summary judgment context, they submitted a declaration from Dan Coffman, who's the president of the local 21, where Mr. Coffman stated, well, we posted bail and we engaged in some efforts to address this arrest policy. But he did not say that the mission of the union was at all frustrated, and there is evidence in the record. Page 966 of the exhibit of the record, in his deposition, Mr. Coffman was asked specifically whether the union stopped engaging in any picketing or rallies or any other lawful actions as a result of the arrest, and his answer was no. There was no frustration of the union's mission of engaging in these protest activities. I'm going to slow down just a bit here. I just want to make sure I understand your position. And I know you argue that they have no standing, period. Assuming that ILW has associational standing to pursue prospective injunctive relief, are the appellants here entitled to an injunction in this case? No. Why not? Because, well, first of all, because the ‑‑ Just assume that they have associational standing for prospective, you know. I'm not aware of any case in which it was held that it was appropriate to issue an injunction to a governing agency, a city or county or whatever, to follow the law. And that's what they would be seeking is in the future, we believe you didn't follow the law here, but in the future we want you to follow the law. We submit we did follow the law. We didn't abridge anyone's First Amendment rights with respect to our police actions. So the nature of a preliminary injunction is such that it's difficult for me to even imagine what it could say that it would direct Cowlitz County and the City of Longview to do different than what it's already doing and has done and is obligated to do under the law. Certainly it couldn't say you can no longer do custodial arrests because custodial arrests are appropriate and they're lawful. And the U.S. Supreme Court has recognized that on a number of occasions. And so this isn't really the kind of situation that would lend itself to an injunction because there isn't any ongoing unlawful action that's occurring here. With respect to the organizational standing, I also believe that they simply have not submitted evidence of either diversion resources or a frustration of their mission, that they voluntarily paid bail, they weren't forced to do that. But that's our position on those. Your position on future injunctive relief is they may have had associational standing when the complaint was filed because they were still subject to this risk, but there's not that immediacy or ongoing threat established so that if the circumstances have changed, they don't have standing because now the statute of limitations is run and there's no evidence. It isn't simply just that the statute of limitations is run. And the operative complaint that we're working with here is the first amended complaint. At the time that complaint was filed, these arrests were over. It was a done deal. And I would submit that they didn't have standing even then to seek a preliminary injunction, that it wasn't the appropriate case for a preliminary injunction at that time that the first amendment complaint was filed. Do you want to give some time to your partner? Yes, I do, Your Honor. Thank you. May it please the Court. Again, I'm Mike Tardiff here representing the county in, say, Longview, presenting argument on their behalf. In view, there is a relatively small amount of time left in view of the large number of questions on the standing issue. Maybe I'll just start by asking the Court if you simply want to ask questions you have in your mind on the retaliation speech issues. So that I make sure I go ahead. Thank you, Your Honor. The Court of Appeals should affirm district court for two reasons. First, criminal conduct and not speech was the but-for cause of the arrest for train blocking. Second, qualified immunity. The arrests were for blocking a train to shut down a business. No reasonable official would have seen arrests for such conduct as retaliation for the speech component of clearly illegal activity. The district court correctly concluded that speech embedded in unlawful acts does not excuse criminal conduct. This protest was not peaceful picketing. This was a mass trespass to prevent operation of a grain terminal staffed by another union, not the LWU. The law enforcement can arrest for unlawful labor activity despite the speech component that's embedded in the unlawful activity. This has been well established since at least the early 1940s, and I'll point the Court to the Allen Bradley and Milk Wagon cases decided by the U.S. Supreme Court, which dealt with local law enforcement, local courts acting against unlawful behavior during labor protests. The essence of their complaint is that for retaliatory motives, they developed a special arrest policy of singling out both in the way they were arrested and the fact of arrest. Is there a tribal issue of fact on whether there was such a policy? No, Your Honor. In this case, number one, there is very strong evidence of probable cause is not denied in this case. Plaintiffs all took, not plaintiffs, but the arrestees all took the Fifth Amendment, and so this isn't the typical retaliation case where there is no or weak probable cause. Plaintiffs had discretion to issue a summons or take them into custody for violation of a misdemeanor statute, right? That's correct, Your Honor. I think Judge Fischer is putting the question, and it's an important one, saying, is there any evidence from which a reasonable trier of fact could find there was a policy not to issue summons but to arrest the strikers? No, Your Honor. The plaintiffs based their claim that Chief Rosenzweig, who's the chief criminal deputy for Cowlitz County, they based their allegation that there was an improper arrest policy on the claim that he issued a memorandum, actually an e-mail memorandum, which prohibited the officers from exercising the normal discretion during arrests. Typically, in Cowlitz County, arrests are custodial, but officers making an arrest always have the option of either writing a citation or doing a short book, a number of other options. And the plaintiffs took the position that Chief Rosenzweig issued a memo, which prevented them from exercising normal discretion, therefore, that was their animus or retaliation. That memorandum is ER-288 here, and I'll read you what it says. Yeah, but there's testimony from Sawyer and Huta and maybe Equivocal, but Thurman testified that he was told to make custodial arrests. In other words, there is some evidence that the memo was considered as removing discretion. No, not by the arresting officers, Your Honor. Thurman and Huta were not arresting officers. Captain Huta is an officer with Longview and had no involvement with the investigation team. Sergeant Thurman is a Cowlitz County sergeant, and he was involved with the team, but he was simply the person who identified the suspects and the probable cause. He was not involved in the arrest process. The arrest process went from Chief Rosenzweig to Sergeant Cruiser, the county deputy, and then the officers that worked under Sergeant Cruiser that actually did the arrest, along with Sergeant Cruiser, were Sawyer and Stryfka and Hartley from Longview. And I'm sorry, there was one county deputy also on the team, and I can't remember his name at this point. In any event, the officers, Chief Rosenzweig testified that there was no policy of the sort alleged by the plaintiffs. Sergeant Cruiser, who was actually supervising the arrests and the investigation, testified that there was no policy of the kind alleged by plaintiffs. Sergeant Hartley testified to that, and Detective Sawyer, or Officer Detective Sawyer. And so basically they're relying on testimony from people who didn't really have a foundation for knowing what these officers were actually instructed. And so I do not think that's an adequate basis to create inference. But might not a jury believe the officers whose names Judge Fisher recited, thinking that the other officers denying the policy were doing so for their own interests? That would be a terrible issue of fact, wouldn't it? I'm not sure that testimony would even come into trial, Your Honor, because it would lack foundation. I'm not sure they would have anything to believe. Because if a trial judge looked at that issue, I don't think that... A police officer doesn't have the ability to say that memorandum is in order to arrest, unless he was an arresting officer? Sergeant Thurman and Captain Huda wouldn't have known what, if anything, Chief Rosenzweig told. Or admissible evidence. Would you move to strike the proffer on summary judgment, if they were relying on that? No, Your Honor. This case developed in a somewhat unusual way. The original allegations in the complaint were for brutal and over-the-top arrests. And then after my 12B6 motion, it changed to lack of or failure to implement the issuing summons policy. And then it was only in response to our summary judgment that the current claim, that's now before this Court, was made. And so there really wasn't an opportunity to move to strike this, because they weren't really arguing this theory at the time we made our summary judgment motion. All right. Thank you very much. Okay, thank you, Your Honor. You have a minute for rebuttal, Ms. Angel. I'll first briefly touch on the issue of the custodial arrest policy. Judge Fischer appropriately pointed out that Thurman, Sawyer, and Huda all testified about the existence of a directive to perform physical custodial arrests. And they weren't irrelevant people. Thurman was on the team, and he testified that he provided backup on these arrests. So he was at some of these homes when these arrests were being made. Huda was amongst the policymakers who were in the original four-person meeting that came together to culminate this sort of ILWU tactical plan. And both Huda and Chief Huffine, two of the four individuals who were at that meeting, testified that or submitted, testified at their deposition that it was their understanding coming out of that meeting that they were going to go out and perform physical arrests. And probably the most glaring evidence of the fact that this was the directive here is the probable cause statements. I would urge the Court to compare excerpts of Record 297 with 299. The one on 297 is a probable cause statement that was prepared before the memorandum went out, describing the facts that support probable cause for one of the arrestees and requesting the issuance of a summons. That was prepared on September 9th. The memorandum went out at 11 p.m. on September 9th. And in ER 299, we have the same probable cause statement for the same arrestee, except that language requesting the issuance of a summons is whited out, and instead there are handwritten words stating that that individual had been arrested in her home. Going back to the standing issue, in addition to the threat of further arrests in connection with the September 7 incident, there is a likelihood, a high likelihood, that ILWU members and supporters will engage in protest picketing and sometimes civil disobedience in the future because this is a labor union, and historically that is what they do. Those are the tools in their arsenal that they bring to a labor dispute. And this particular protest arose out of an EGT labor dispute in connection with contract negotiations, and the retaliation that we're alleging isn't specific to that labor dispute. It has to do with a mass demonstration by the ILWU that was robust and intimidating. I think another good way to look at this is if the September 7 incident looked very different and it was stripped of its First Amendment components and you just had the 12 arrestees at issue out there violating the law, i.e., trespass and train obstruction, which are the only two simple misdemeanors for which any of these individuals were arrested, and they didn't have picket signs, they were not gathered in a large group, they weren't verbally challenging the police officers, if those elements weren't there, a reasonable jury on these facts could find that this custodial arrest policy would not have been instituted. Why wouldn't legal remedies be sufficient if the police arrest people when they're simply peacefully protesting? Can't they get damages for false arrests? The critical issue here is the implication of the First Amendment rights and the chilling effect it has on future protests. You're assuming that the ILWU will be lawful and the police will be unlawful. So you're on an injunction saying cops follow the law. The issue here is not that they were held liable for trespass. No one is disputing that they can do that. The issue is that they went out and targeted these individuals because of the First Amendment component of their activity. And that is the problem. And on a case, a closely analogous case concerning police response to protest activity, the 11th Circuit in Bourgeois v. Peters, which is at 387 F. 3rd, 1303, found that these type of protest cases are capable, there's an exception to them under the Moodness Doctrine, for capable of repetition yet evading review because it's rarely the case that these protests last long enough or the particular labor dispute lasts long enough to allow for the review through the courts. Thank you very much, Ms. Edna. Thank you, Your Honor. The case of ILWU v. Nelson is submitted, and we will go to the next case on the docket, which is Dietz v. Baldwin.
judges: Fisher, Bea, Murguia